## BARGE No. 6.*

(*District Court, E. D. Pennsylvania.*   March 29, 1881.)

1. ADMIRALTY—SALE OF BOAT—BILL OF SALE—EXECUTION OF BY IL-
   LITERATE MAN UNDER MISAPPREHENSION AS TO ITS CONTENTS—
   FRAUD.

   A bill of sale of a boat was executed, but not acknowledged.   The
   vendor testified that he was an illiterate man; that the bill of sale
   had not been read to him, but that he had signed it supposing it to
   contain an agreement for a pledge of the boat, the terms of which
   had been previously arranged between the parties.   The vendee, on
   the other hand, testified that the vendor had agreed to sell the boat;
   that the bill of sale had been drawn up in accordance with that
   agreement, and had been read to the vendor before signing.   *Held*,
   as a matter of fact, (upon a review of the collateral evidence tending
   to corroborate or contradict these respective allegations,) that imposi-
   tion had been practiced in obtaining the vendor's signature to the
   bill of sale.

In Admiralty.   Libel for Possession.

The evidence disclosed the following facts:   In February,
1878, Patrick Hogan, the libellant, who was then the owner
of the barge in controversy, chartered her, to be manned by
himself, to one William Holeman.   While employed under
this charter the boat was, during a temporary absence of
Hogan, and while manned by a person appointed by Hole-
man, sunk at the wharf.   She was raised and repaired at a
cost of about $400.   Hogan being unable to pay for the
repairs they were paid for by Holeman, and at the same time
Hogan executed to him a bill of sale of the boat, the consid-
eration named therein being the sum of $500.   This bill of
sale was duly witnessed but not acknowledged.   After its
execution the barge continued to be used in the service of
Holeman and manned by Hogan, who, however, received but
$10 per week.   In September, 1880, a dispute arose between
the parties, Hogan claiming the ownership of the boat and
refusing to quit her.   Upon Holeman's complaint Hogan was
thereupon arrested for stealing the boat, but was discharged
on *habeas corpus*.   During Hogan's imprisonment Holeman

*Reported by Frank P. Prichard, Esq., of the Philadelphia bar.

had taken possession of the boat, and upon Hogan's release the latter filed the present libel. Libellant alleged that at the time of the sinking of the boat there had been some controversy as to who should pay for the repairs, which had been settled by an agreement that Holeman should pay them, but should re-imburse himself by retaining from the sum agreed to be paid to Hogan for her use $15 per week, until the amount of the bill was repaid, and should in the meanwhile hold the title to the boat as collateral security; that libellant was an illiterate man; that the bill of sale had not been read to him, but that he supposed it contained the agreement previously made; and that the amount of the repairs had now been fully repaid to Holeman by the retention of the weekly sums stipulated for. Respondent, on the other hand, alleged that Hogan, being unable to pay for the repairs, and fearing a forced sale of the boat, requested a loan of the money from Holeman, and, on this being refused, agreed to sell the boat to Holeman for $500—out of which $400 was to be paid for the repairs and $100 to Hogan; that the bill of sale was thereupon executed by Hogan, after having been read to him, and that the $100 was subsequently paid; that Holeman continued to employ Hogan at a salary of $10 per week until September, 1880, when he was discharged. The subscribing witnesses were called, but testified that the paper was not read in their presence, nor did they know its contents. There was no direct testimony as to the agreement of the parties, on the execution of the bill of sale, other than that of the parties themselves, but various collateral evidence was offered for the purpose of contradicting or corroborating the respective allegations.

*A. C. Selden* and *Curtis Tilton,* for libellant.

*Walter G. Smith* and *Francis Rawle,* for respondent.

BUTLER, D. J. Respondent exhibits a bill of sale from libellant, and claims title to the boat under it. Libellant says his signature to the paper was obtained through fraud; that he is illiterate, unable to read writing, and the paper was not read to him; that he and respondent had a contract

for hiring, (of himself and the boat,) and he understood the paper as relating to this.

The allegation of fraud must be proved. The libellant is presumed, (in the absence of evidence to the contrary,) to have known the contents of the paper, when signing. The burden of proof is, therefore, on him.

Some weeks preceding the date of the paper, the respondent had contracted with the libellant for his services, and the use of his boat. The libellant entered upon the service, and a few days after, (he being detained at home by the condition of his family,) respondent took possession of the boat, and by improper loading, sunk and damaged it. Repairs being thus rendered necessary, the boat was taken to Mr. Tilton's yard, and a bill for $400 contracted. What proportion of this was for repairs rendered necessary by the accident, and what by reason of the boat's previous condition, is not clear; but I have no doubt much the smaller part is referable to the former cause. The boat appears to have been in fair condition for the use being made of it before the accident, but after this occurrence libellant resolved to strengthen and improve it. Thus far the statements of the parties do not materially differ,—(saving as relates to the *extent* of the injury sustained by sinking.) Here, however, they separate. The libellant, says the respondent, in consideration of having injured the boat, became surety for the repairs resolved upon, and contracted for the service of himself and the boat, at $25 per week, $15 of which were to be retained weekly, until the bill for repairs should be paid; that when he signed the bill of sale, and the other paper accompanying it, he understood them to express this agreement, neither being read to him, and that he knew no better until respondent exhibited and read them in answer to his demand for settlement, when a claim to the boat was first set up; that on completion of the repairs he continued in respondent's employment, as before he had been, for a period of over six months, and then, believing respondent had been paid by the weekly retention of $15, under the contract, he demanded a settlement; whereupon the respondent

became angry, claimed possession of the boat, ordered him away, and directly after, under pretence that he had stolen the boat, (which was taken with him,) had him arrested, and took the boat. The respondent, on the other hand, denies becoming security for the repairs, or hiring the libellant and boat, after the accident; saying that when the repairs were about being completed, the libellant, fearing his boat would be sold on account of them, solicited him to purchase it, and that after some hesitation he did so, for $500,—paying Mr. Tilton $400, less a discount of $25, for cash,—and $100 to libellant's wife, at his request, and took the bill of sale, and accompanying paper, (which he read to the libellant before signing,) as evidence of the transaction.

Which of these conflicting statements is true? That of the libellant is corroborated, and the other contradicted, by Mr. Tilton, to the extent that he heard the parties talking when at his place, about $24 or $25 per week for the use of the vessel, and says respondent was surety for the repairs. It is also corroborated by the respondent's failure to produce receipts or book-entries, for payment of anything on account of the alleged purchase, to the libellant or his wife; and the testimony of the wife that no such payment was made to her, as respondent states. The subscribing witnesses to the bill of sale and accompanying paper, say neither was read in their presence; that they did not know the contents of either, and did not hear a sale spoken of at the time, nor at any time. Neither Mr. Tilton, who repaired the boat, and saw a good deal of respondent in connection with it, nor any other witness called, ever heard either of the parties refer to a sale or transfer of the boat,—so far as appears. On completion of the repairs libellant resumed possession of the boat and employed it, precisely as he had done before, furnishing all necessary supplies, (except chains, anchors, etc., procured at the time of repairing,) and any third person would certainly have believed, from appearances, that he continued to be the owner, and have been justified in dealing with him as such. On the other hand the respondent is not corroborated in any

respect, (if we omit the bill of sale and accompanying paper,) and while his conduct may possibly have been honest and fair, appearances are against him. The circumstances under which he claims to have purchased the boat are calculated to excite suspicion. The situation of the libellant, an illiterate man, in necessitous circumstances, in the respondent's employment; seriously embarrassed by the injury to his boat; the inadequacy of the alleged consideration; the resort to unfairness, in arresting the libellant on a charge of larceny, to obtain possession, are circumstances which cannot be overlooked in considering the claim which the respondent sets up. His acknowledged offer of $50 to "get rid" of the libellant and obtain possession of the boat, just before making the charge of larceny, is not consistent with his claim; and his statement that if the repairs had been found to cost $500, he would have paid libellant $100, notwithstanding the contract did not require it, does not tend to inspire confidence in his candor. In short, while the libellant's statement seems consistent and probable, in itself, and is corroborated in important particulars, that of the respondent seems inconsistent and improbable, and is wholly without corroboration,—aside from the papers referred to.

I find, therefore, as matter of fact, that imposition was practiced in obtaining the libellant's signature to the bill of sale and accompanying paper, and that the contract between the parties was simply for the services of the libellant and his boat, on the terms he has stated.

If the contract amounted to a *pledge* of the boat for the sum advanced, (and it probably did,) the evidence, I think, justifies a belief that respondent has been paid by the money retained.

A decree will, for these reasons, be entered in favor of the libellant.